UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Allen Johnson, #151706; <br><br> Petitioner; <br><br> vs. <br><br> E. Richard Bazzle, Warden of the Perry Correctional Institution; and Henry McMaster, Attorney General for South Carolina; <br><br> Respondents. | C/A No. 8:05-3522-CMC-BHH <br><br><br><br> **Report and Recommendation** |

Petitioner, Allen Johnson (hereafter, the "petitioner"), is a state prisoner proceeding *pro se* under Title 28 United States Code Section 2254. By definition, the relief which petitioner seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2241(b)(3). Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

Petitioner is incarcerated at the Perry Correctional Institution, in Pelzer, South Carolina, serving a twenty-five year sentence imposed by the Greenville County Court of General Sessions.[1] On July 19, 2000, Petitioner entered guilty pleas to

---

[1] – The docket records of the Greenville County Courts of General Sessions and of Common Pleas are accessible online at a website maintained by the South Carolina Thirteen Judicial Circuit <http://www.13th-judicial-circuit.org>. This Court may take judicial notice of these records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Shop v. Bell & Howell*, 872 F.2d 1178, 1182, 1989 (4th Cir. 1989); *Days v. Bounds*, 509 F. 2d 66 (4th Cir. 1975); *Mann v. Peoples First National Bank & Trust Co.*, 209 F.2d 570, 572 (4th Cir. 1954).

narcotics charges under two indictments. *See State v. Johnson*, 1998-GS-23-3735 and *State v. Johnson*, 1998-GS-23-3736. Petitioner states that he did not appeal from his convictions. Under Rule 203(b)(2) of the South Carolina Appellate Court Rules (SCACR), notice of appeal from a conviction in the Court of General Sessions must be served within ten (10) days. Petitioner's conviction became final on July 31, 2000.

Petitioner filed an application for Post-Conviction Relief (PCR) in the Greenville County Court of Common Pleas on March 17, 2005. *See Johnson v. State*, 2005-CP-23-1728. The PCR application was dismissed two months later, on May 17, 2005. Petitioner states that he did not receive an evidentiary hearing.

Under *Houston v. Lack*, 487 U.S. 266 (1988), Petitioner commenced this action on December 16, 2005. Pursuant to *In Re: Procedures in Actions filed by Prisoners*, 3:05-mc-5010, (D.S.C. November 1, 2005), the undersigned filed an Order on December 28, 2005, directing Petitioner to answer Special Interrogatories. Among the questions was the status of his PCR Application. On January 17, 2005, Petitioner filed his response, attaching an order of the South Carolina Supreme Court filed on September 22, 2005, dismissing his Petition for Writ of Certiorari under SCACR 227(c).[2]

### *Pro Se* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th 1978). *Pro se* pleadings are held to

---

[2] – Rule 227 SCACR governs appeals from Circuit Court dismissals of PCR applications.

2

a less stringent standard than those drafted by attorneys. Even under this less stringent standard, however, a *pro se* petition is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct a party's legal arguments for him or her. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A careful review has been made of the *pro se* petition pursuant to this standard and the procedural provisions of 28 U.S.C. § 1915 and the Anti-Terrorism and Effective Death Penalty Act of 1996. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-325 (1989); *Nasim v. Warden Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); and *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

## DISCUSSION

Petitioner attacks his conviction as follows:

> Petitioner was denied the guaranteed protections of the Federal Constitutions Fourteenth Amendment due process clause and effective assistance of counsel in violation of the Sixth Amendment. Petitioner's plea was not voluntary, knowing and intelligently entered; pleas counsel failed to independently and adequately investigate the charges; mislead petitioner into thinking he did not have a defense; and coerced petitioner into excepting [sic] the guilty plea.

Petitioner indicates that he made the same attacks on his conviction in the PCR application.

This petition should be dismissed as a matter of law, specifically the doctrines of "exhaustion" and "procedural bar." These two separate theories operate in a similar manner to require a *habeas* petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

## **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of *habeas* petitions. Applications for writs of *habeas corpus* are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is either an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

*Rose v. Lundy*, 455 U.S. 509, 515 (1982).

When the petition for *habeas* relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of *habeas corpus* in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir.1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.1977). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See *Rose v. Lundy*, *supra*. In cases where the South Carolina Supreme Court applied a

procedural bar, however, this Court is directed to also apply that bar, except in certain limited circumstances.

## Procedural Bar

If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this Court. "Procedural bypass" is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal *habeas* petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

Petitioner admits that he filed no direct appeal. His PCR application was dismissed. As noted above, Rule 227 SCACR governs appeals from Circuit Court dismissals of PCR applications. Subsection (c) provides:

> Explanation Required. If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as to

> why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed.

Since Petitioner filed no previous PCR application, the inference arises that the Greenville Court of Common Pleas dismissed his 2005 application as untimely based upon South Carolina's one-year limitation on PCR applications.  *See* S.C. Code Annotated § 17-27-45.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote:

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).  Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice resulting from the alleged constitutional violation."

*Smith v. Murray*, *supra*, quoting *Wainwright v. Sykes*, 433 U.S. at 84 (1977); *see also Engle v. Isaac*, 456 U.S. 107, 135 (1982).

Stated simply, if a federal *habeas* petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.

Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this Court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" but the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.1997), citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996).

### Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure. *Coleman v. Thompson*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, *supra*. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular

claim. *Id*; *Clozza v. Murray*, 913 F.2d 1092 (4th Cir.1990); and *Clanton v. Muncy*, 845 F.2d 1238 (4th Cir.1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir.1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995), the Fourth Circuit stated that once a claim is determined to be procedurally barred, a district court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir.1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

It must be noted, however, that this petition is also untimely under 28 U.S.C. §2244(d). The AEDPA took effect as a statute of limitations for federal *habeas corpus* relief on April 24, 1996:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

9

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The United States Supreme Court and decisions of the Fourth Circuit have, of course, treated this statute of limitations as being subject to equitable tolling. *Lindh v. Murphy*, 521 U.S. 320 (1997). Moreover, the United States Court of Appeals for the Fourth Circuit has mandated extra caution in *sua sponte* dismissals of untimely petitions under AEDPA:

> [W]hen a federal habeas court, acting sua sponte, dismisses a § 2254 action as untimely without notice to or input from the petitioner, the court cannot be certain that there are no circumstances that would cause the petition to be timely. The district court ought at least to inquire whether there are any facts not apparent to the court that militate against the application of the limitations bar.

*McMillan v. Jarvis*, 332 F3d 244, 249 (4th Cir. 2003); *see also Hill v. Braxton*, 277 F3d 701 (4th Cir. 2002).

With these guidelines in mind, the undersigned advised Petitioner of the AEDPA limitations period and invited an explanation for the lapse of time between the

10

date when his conviction became final in July 2000 and the filing of his PCR application.

Petitioner responded:

> Petitioner's plea wasn't voluntarily, knowingly and intelligently entered. His plea counsel coerced him into excepting [sic] the plea and mislead him into believing he had no defense at all. Petitioner will attempt to overcome his claims' being procedurally defaulted.

Petitioner's candor in admitting procedural default is commendable. Unfortunately, he provides no explanation at all for a delay of almost five years between his conviction and his untimely PCR application in March 2005. The undersigned concludes that Petitioner has received notice and opportunity to explain why this action should not be considered time-barred. The petition should, therefore, be dismissed as untimely as well as procedurally defaulted.

      Accordingly, it is recommended that the above-captioned case be dismissed without prejudice and without requiring the respondents to file a return. *See Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970)(federal district courts have duty to screen habeas corpus petitions and eliminate burden placed on respondents caused by ordering an unnecessary answer or return). Petitioner's attention is directed to the notice on the next page.

                                  Respectfully Submitted,

                                  S/Bruce H. Hendricks
                                  United States Magistrate Judge

January 23, 2006
Greenville, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See Mathews v. Weber*, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See United States v. Schronce*, 727 F.2d 91, 94 & n. 4 (4th Cir.); and *Wright v. Collins*, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  *Howard v. Secretary of HHS*, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also Praylow v. Martin*, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court).  In *Howard*, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord Lockert v. Faulkner*, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark*, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.**  *See Wright v. Collins*, *supra*; and *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 10768
Greenville, South Carolina 29603**
